**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JEFFREY R. STIMSON,

    Plaintiff,

    v.

JOHN E. POTTER, Postmaster General,

    Defendant.
_____/

No. C 05-0411 PJH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant United States Postal Service's ("USPS" or "defendant") motion for summary judgment came on for hearing on February 15, 2006, before this court. The plaintiff, Jeffrey Stimson ("Stimson"), who is proceeding pro se, did not appear at the hearing or file an opposition to defendant's motion. Having read the parties' papers and carefully considered their arguments and the relevant legal authorities, and good cause appearing, the court GRANTS the motion.

**BACKGROUND**

This is an employment discrimination case brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). Stimson, a white male, was employed by the USPS at the time he was terminated on February 14, 2003, for falsifying a medical certificate, failure to follow instructions regarding his attendance, and unacceptable conduct. He asserts two claims under Title VII: one for race discrimination and one for retaliation.

Stimson was first employed by the USPS as a temporary employee. The dates of his temporary employment are unclear. Around 1997, Stimson became a full-time regular employee as a city carrier at the Danville Post Office, a position that he held until his

termination in 2003.

During that time, Stimson had numerous disciplinary issues, arising from misconduct toward his co-workers, his supervisor, and from attendance problems. For example, in 1997, Stimson told an African American coworker in front of several other employees that she "worked like Aunt Jemima." Subsequently, in March 1998, Stimson was involved in a verbal and physical altercation with another co-worker. As a result of the 1998 incident, the USPS issued a notice of proposed removal. Stimson subsequently entered into a "last chance agreement," by which he was placed on a probationary-like period for one year, and avoided removal. Stimson filed a union grievance as a result of the 1998 incident.

During Stimson's employment, he was on restricted sick leave pursuant to the Employee and Labor Relations Manual ("ELM"). Therefore, he was required to submit medical documentation to substantiate any absences or inability to work.[1] *See* Ott Decl. at par. 3 (noting that Stimson was "on notice that he must provide medical certification for any absences"). It is undisputed that Stimson was aware of the USPS sick leave policies. *See* Stimson Depo. at 64.

In 1999, Stimson first began working for supervisor, Candace Neff ("Neff"). Stimson claims that Neff discriminated against him, and testified that he believed Neff was out to get him.

Many of Stimson's problems with Neff appear to have been related to his tardiness and insubordination. On November 2, 2000, Stimson was late for work. Upon his arrival, Neff directed him to report immediately to his route. Stimson concedes that he disobeyed Neff's order. Rather than assume his route, Stimson sought to photocopy documentation that he believed explained his absence. Neff also claimed that in disobeying her order, Stimson was loud and hostile. *See* Exh. C, Stimson Depo. (Exh. A, Coleman Decl.). As a

---

[1] It is unclear when Stimson was placed on restricted sick leave. Defendant has included portions of ELM at Exh. A to Stimson's Depo. However, the pertinent section, section 513.37, was not included.

result, on December 1, 2000, Neff suspended Stimson for seven days based upon his failure to follow instructions and unacceptable conduct. *See id.* Neff's written notice of suspension noted that Stimson violated USPS policies, contained in the ELM, which Stimson concedes he was provided. Stimson Depo at 62.

In June 2001, Stimson had an accident with a USPS vehicle. In July 2001, Stimson sought EEO counseling regarding management's response to his behavior following the accident. Thereafter, on September 7, 2001, Stimson received his second notice of removal. *See* Exh. E, Stimson Depo. That notice was based on two charges of failure to follow instructions, and one charge of irregular attendance or tardiness and unscheduled absences without official leave. The first failure to follow instructions charge concerned Stimson's failure to provide the required medical documentation to substantiate his absences from work in August 2001. The second failure to follow instructions charge concerned Stimson's refusal to complete the required USPS documentation after his June 2001 accident with the USPS vehicle. The attendance-related charge was based on numerous unapproved absences and tardiness. *Id.* Stimson subsequently filed another union grievance.

In an October 4, 2001 settlement agreement regarding Stimson's grievance, the proposed September 7, 2001 removal was reduced to a fourteen-day suspension, which the USPS put into abeyance for one year provided that Stimson's attendance improved. *See* Exh. G, Stimson Depo. Pursuant to that agreement, the USPS would review Stimson's attendance again in October 2002 to determine whether it would implement the fourteen-day suspension. *Id.*

In October 2002, Stimson met with Neff regarding his irregular attendance, which had not improved in spite of the October 2001 agreement. On November 23, 2002, Neff informed Stimson in writing that, as a result, the fourteen-day suspension would be imposed. *See* Exh. H, Stimson Depo. The USPS also informed him both orally and in writing that his irregular attendance was a very serious matter and that it could lead to his

3

termination.

Thereafter, Stimson was again absent from work on December 3 and 4, 2002. When Stimson returned to work on December 5, 2002, he submitted a falsified doctor's certificate that he was under a doctor's care and unable to return to work until December 6, 2002. Stimson does not dispute that he falsified the certificate or that he failed to report for work on December 3 and 4.[2] Additionally, during a subsequent "just cause interview", Stimson lied to Neff when she inquired whether he had modified the medical certificate or added any dates. *See* Exh. L, Stimson Depo.

On February 14, 2003, Neff issued Stimson his third and final notice of removal. *See* Exh. L, Stimson Depo. The notice was based on Stimson's alteration of the medical certificate, his failure to follow instructions, and unacceptable conduct. The notice referenced the previous notices and incidents, and also noted that inspectors had confirmed with Stimson's doctor that the December 2002 medical certificate had been altered.

On February 28, 2003, Stimson again sought EEO counseling in response to the February 14, 2003 notice, and alleged race discrimination and retaliation for prior EEO activity. Stimson's last day of employment with the USPS was on March 26, 2003. He filed a complaint with the EEOC in July 2003, again alleging race discrimination and retaliation. The EEOC subsequently accepted review, and an ALJ issued an unfavorable decision. On August 23, 2004, the EEOC issued a right to sue letter and affirmed the ALJ, holding that:

> The [USPS] offered as its legitimate, nondiscriminatory reason for complainant's removal, the explanation that complainant failed to follow instructions to be regular in attendance and engaged in unacceptable conduct through the falsification of medical certification. Complainant was unable to rebut the agency's explanation for his removal. There was no dispute that complainant altered the dates on his medical certification; complainant merely argued that the reason that he changed the certification was because a portion of it was left blank. There was no indication on the record that complainant's removal was motivated by discrimination on the bases of race,

---

[2]Stimson was seen in the doctor's office on December 3, 2002, and was released to return to work that same day.

4

color or retaliation.

*See* Plaintiff's Request for Appointment of Counsel.

Stimson filed the instant complaint on January 27, 2005.

## DISCUSSION

At the outset, the court notes that Stimson's lawsuit appears to be untimely. The EEOC's August 23, 2004 right to sue letter presumes that Stimson received the letter no later than August 28, 2004. Stimson then had ninety calendar days from August 28, 2004, to file his complaint. Accordingly, Stimson was required to file his complaint in this case no later than Monday, November 29, 2004.

The court nevertheless addresses the merits of defendant's motion below.

**A.   Summary Judgment Legal Standard**

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and the discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. *Id.* If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *Anderson*, 477 U.S. at 250.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 250. "To show the existence of a 'genuine' issue, . . . [a plaintiff] must produce at least some significant probative evidence tending to support the complaint." *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990). The court must view the evidence in a light most favorable to the nonmoving party. *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003). The court must not weight the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999).

Deference to the nonmoving party has some limits. Thus, a plaintiff cannot rest on the allegations in her pleadings to overcome a motion for summary judgment. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). Self-serving affidavits will not establish a genuine issue as to material fact if they fail to state facts based on personal knowledge or are too conclusory. *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001). If the nonmoving party fails to show that there is a genuine issue of fact for trial, "the moving party is entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323.

Regardless of whether plaintiff or defendant is the moving party, each party must "establish the existence of the elements essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**B.     Defendant's Motion for Summary Judgment**

USPS seeks summary judgment on both claims alleged in Stimson's complaint.

1.     Race Discrimination Claim

    a.     Legal Standard

6

1  To establish a prima facie case of employment discrimination based on disparate
2  treatment for race discrimination, Stimson must show that: 1) he is a member of a
3  protected class; 2) he suffered an adverse employment action; 3) there is a causal
4  connection between his protected status and the adverse employment action; and 4)
5  similarly-situated individuals outside the relevant class were treated better than he was.
6  *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004), *citing McDonnell*
7  *Douglas v. Green*, 411 U.S. 792, 802-03 (1973)).

8  If Stimson can make this prima facie case, the burden then shifts to the USPS to
9  "articulate a legitimate, nondiscriminatory reason" for the adverse employment action.
10 *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002).  If USPS can do so, the burden
11 shifts again to the plaintiff to demonstrate that the alleged legitimate reason is in fact a
12 pretext for discrimination.  *Id.*  However, the burden of persuasion remains at all times on
13 the plaintiff, the party with the burden of proof at trial.  *Id.*

14       b.     Analysis

15 Before the EEOC, Stimson complained of his termination following the February 14,
16 2003 notice of removal.  *See* Exh. P, Stimson Depo.  He argued that he was discriminated
17 against on the basis of his race because two other carriers, Charles Johnson and Ken
18 Tucker, whom Stimson alleges also forged documents, were treated differently.

19 The government argues that Stimson has failed to satisfy his prima facie case for
20 discrimination because he admits that he was not fired because of his race, and because
21 he cannot identify similarly-situated employees who were treated more favorably than him.

22 The government is correct.  Stimson cannot make out a prima facie case for race
23 discrimination because he has not shown either that there was a causal connection
24 between his protected status and the adverse employment action; or that similarly-situated
25 individuals outside the relevant class were treated better than he was.

26 First, Stimson conceded during his deposition that he did not believe that race was a
27 factor in the USPS' February 14, 2003 notice of removal leading to his termination.  *See*

28

7

Coleman Decl., Stimson Depo. at 132:15-20; 133:5-10. He also testified that he had no reason to believe that Neff, the supervisor whose conduct he complained of, disliked him because of his race. *Id.* at 86:10-17.

Additionally, Stimson has not demonstrated that non-white employees were treated more favorably than he was. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2004). The only non-white employee that Stimson points to is Charles Johnson. Johnson, an African-American male employee, signed a customer's name to a certified mail receipt so that Johnson was able to deliver the letter.[3] However, at the time of the incident, unlike plaintiff, Johnson lacked the disciplinary history that Stimson possessed at the time of Stimson's document falsification. *See* Ott Decl., par. 5. Also unlike Stimson, the incident was Johnson's first offense. *Id.*; *see Wall v. Nat'l R.R. Passenger Corp.*, 718 F.2d 906, 909 (9th Cir. 1983) (plaintiff was not similarly situated to other employees not terminated for similar conduct where other employers, unlike plaintiff, were not "repeat offenders").

Even if Stimson were able to demonstrate a prima facie case, the court finds that the government has proffered substantial legitimate non-discriminatory reasons ("LNDR") in support of Stimson's dismissal under the circumstances. *See id.* ("poor disciplinary record, continuous poor attitude, and conduct . . . preceding discharge" constituted sufficient LNDR). Plaintiff has offered no evidence of pretext.

For these reasons, the court GRANTS summary judgment on the race discrimination claim.

2. <u>Retaliation Claim</u>
    a. Legal Standard

---

[3]The other employee Stimson points to, Ken Tucker, is, like Stimson, a white male and therefore not outside of the relevant protected class.

8

In order to make out a prima facie case of retaliation, a plaintiff must show: 1) that he engaged in a protected activity; 2) that he suffered an adverse employment action; and 3) that there was some causal link between the two. *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2004). For purposes of proving a prima facie case in the absence of direct evidence, the causal link may be inferred from two elements of circumstantial evidence: (a) the decisionmaker knew of the plaintiff's protected activity at the time the adverse action was taken; and (b) there was proximity in time between the protected action and the allegedly retaliatory employment decision. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

If plaintiff succeeds in making a prima facie showing, the burden shifts to the defendant employer to present a legitimate reason for the alleged adverse employment action. *Id.* at 1066. Once the defendant has articulated a legitimate business reason, the plaintiff can prevail only if he provides evidence showing that the proffered explanation is pretextual. *Id.* Absent such a showing, summary judgment is appropriate. *Id.* The evidence of pretext "must be specific and substantial in order to survive summary judgment." *Brown v. City of Tucson*, 336 F.3d 1181, 1188 (9th Cir. 2003).

b.  Analysis

Stimson contends that his termination was in retaliation for his July 2001 EEO counseling.[4]

Defendant argues that Stimson is unable to make a prima facie showing of retaliation because he can not demonstrate a causal link between his termination and his EEO counseling. Additionally, USPS argues that there can be no inference of a causal link because of a lack of proximity in time.

---

[4] Stimson's February 28, 2003 EEO counseling post-dated his February 14, 2003 notice of removal.

9

As with the discrimination claim, Stimson testified that he did not believe the February 14, 2003 notice of removal was issued in retaliation for prior EEO activity. *See* Stimson Depo. at 132:21-133:4.

"[I]n some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation"); *Yartzoff*, 809 F.2d at 1376 (causation existed where adverse action occurred less than three months after complaint was filed). The Ninth Circuit has, however, cautioned that a "specified time period cannot be a mechanically applied criterion. A rule that any period over a certain time is per se too long (or, conversely, a rule that any period under a certain time is per se short enough) would be unrealistically simplistic." *Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003).

Here, because there was a nearly nineteen-month period that elapsed between the EEO counseling and Stimson's February 2003 notice of removal, the court finds that there is no inference of a causal link. Additionally, as with the race discrimination claim, the court finds that USPS has demonstrated sufficient LNDR to rebut any prima facie case of retaliation. *See Wall*, 718 F.2d at 909. Again, plaintiff has offered no evidence of pretext.

For theses reasons, the court GRANTS summary judgment on the retaliation claim as well.

**CONCLUSION**

The court GRANTS defendant's motion for summary judgment on both claims. This order fully adjudicates the motion listed at No. 22 of the clerk's docket for this case and terminates all other pending motions. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: February 22, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge

10